FABRIC FIRE HOSE COMPANY, Respondent, *v.* TOWN OF WHITESTOWN, Appellant.

Fourth Department, March 5, 1919.

**Town — moneys raised to purchase hose for unincorporated fire district and converted by supervisor — when town not liable to seller — mandamus proper remedy to compel retaxation of fire district.**

Where in an action against a town to recover the contract price of fire hose sold for use by an unincorporated fire district which is not wholly within the boundaries of any municipality there is no evidence showing under what provision of law the fire district was created, the seller cannot recover against the town after a tax levied and collected for the purchase of the fire hose was turned over to the supervisor of the town who appropriated the same to his own use.

The action of the town officials was for the benefit of the taxpayers of the fire district only and their acts did not bind the town which cannot be held liable for any dereliction of such officers in the discharge of functions exercised in behalf of such district.

*It seems,* that if the fire district is still liable for the price of the fire hose and may be taxed again to defray such obligation the proper remedy is by mandamus to compel the proper authorities again to raise the money by taxation.

APPEAL by the defendant, Town of Whitestown, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Oneida on the 8th day of December, 1917, upon the decision of the court after a trial at the Oneida Special Term.

*Adrian S. Malsan,* for the appellant.

*Arthur J. Foley* [*Lewis, Foley & Foley,* attorneys], for the respondent.

DE ANGELIS, J.:

The action was brought for the price of fire hose, nozzles, etc., sold and delivered by the plaintiff to the defendant, as alleged in the complaint, upon a proposal and acceptance, copies of which, attached thereto, are as follows:

"NEW YORK, *November* 12, 1908.

"*To the Town of Whitestown, N. Y.*

"The Fabric Fire Hose Company hereby agrees to furnish: 1,000 feet, more or less, Keystone Brand Wax and Gum Treated Fire Hose, at $1.00 per ft.   *   *   *   with Automatic

Couplings attached, thread of couplings to fit those now in use in your department.   [Certain guaranties in no way involved in this case omitted.]

" Hose to be delivered f. o. b. cars Whitesboro, N. Y.

" 2 Hart Shut-off Nozzles, at $15.00 each;

" 3 Underwriter Play Pipes.

" FABRIC FIRE HOSE CO.

" By O. H. GARDNER, *Agent.*

" *Town of Whitestown, N. Y.*

" Your proposal is hereby accepted for 1,000 feet of Keystone Hose and supplies as listed above.

" For the TOWN OF WHITESTOWN, N. Y.,

" B. L. WRENCH,

" *Supervisor Town of Whitestown, N. Y.*"

The complaint further shows that the plaintiff furnished such hose and supplies to the defendant as provided in the contract and performed its contract and that the defendant accepted and used such hose and supplies.

The complaint further shows that on the 2d day of August, 1909, a bill for such property was audited by the town board of the defendant at and for the sum of $1,030 and that the town board at the same time passed a resolution directing the supervisor of the defendant to pay to the plaintiff upon the presentation of a town order therefor such sum of $1,030; that thereafter and on the 12th day of August, 1909, the plaintiff presented a town order for the payment of such bill to the supervisor of the defendant for payment; that he refused to pay the same and has failed and neglected to pay the same; and that neither such sum of money nor any part thereof has been paid and that there is now due and owing to the plaintiff by the defendant the sum of $1,030, with interest thereon from August 12, 1909.

The answer contains in substance a general denial of the complaint and sets forth as a defense that on the 18th day of November, 1908, the plaintiff presented to the town board of the defendant a statement or bill for hose and fire department supplies alleged to have been furnished to fire district No. 1; that thereafter and on or about August 2, 1909, the statement or bill was audited by the town board at and for the sum of

$1,030, and a resolution was passed by the board directing that an order·be drawn upon the funds in the hands of the supervisor belonging to fire district No. 1 for the sum of $1,030, and that the supervisor pay that sum to the plaintiff out of the funds in his hands belonging to fire district No. 1.

The answer further alleges that fire district No. 1 is a separate and distinct district and that the defendant is not liable for the obligations of that district.

Before the taking of any evidence the counsel for the defendant made a motion for a dismissal of the complaint upon the ground that it did not state facts sufficient to constitute a cause of action, suggesting that the only relief available to the plaintiff upon the statement of the facts in the complaint was an application by mandamus to compel the levying of a tax to raise the money to pay the bill. The motion was denied and an exception taken by the defendant.

The evidence established the proposal and acceptance, copies of which were attached to the complaint.

From the proceedings of the town board of the 5th day of November, 1908, there was introduced in evidence the following minute:

" The residents of Fire District No. 1 presented a petition signed by a majority of the taxpayers, requesting the board to purchase 1,000 feet of new hose for their use. On motion of Mr. Bielby, the supervisor was appointed a committee to get prices and report."

There was evidence that the unincorporated village of New York Mills constituted fire district No. 1 and that such fire district had existed longer ago than the year 1905. The counsel for the defendant admitted that it was a separate district legally created and it appeared that there are two separate fire districts outside of the two incorporated villages of the town, to wit, districts Nos. 1 and 2.

It appeared that the hose and other articles were delivered to and came into the possession of fire company No. 1.

There was introduced in evidence from the proceedings of the board of supervisors of Oneida county of December 21, 1908, the following:

" Mr. Wrench presented the following petition, which on his motion, was received and placed on file:

" *To the Honorable, the Board of Supervisors of Oneida County:*

" We, the undersigned, a majority of the town board of the Town of Whitestown, do hereby determine and request, pursuant to statute in such cases provided, that the amount necessary to be raised for water and hose for Fire District No. 1 in said town is the sum of $1,940.00; and that the amount necessary to be raised for water for Fire District No. 2 in said town is the sum of $985.00.

" We therefore petition your Honorable Body that the above amounts be levied upon the taxable property in Fire District No. 1 and 2 respectively; and that the collector of said town be directed to collect the same and pay the amount collected to the supervisor of said town as provided by law. Dated at the Town of Whitestown this 19th day of December, 1908. Signed B. L. Wrench, Supervisor; George E. Thomas, Town Clerk; I. P. Bielby, William M. Foster, Edward L. Evans, William M. Ashley, Justices."

" Mr. Wrench offered the following resolution and moved its adoption: Resolution No. 71.

" *Resolved:* That in compliance with the petition presented to this board, signed by the town board of the Town of Whitestown, the sum of $1,940.00 be used for water and hose for fire purposes in Fire District No. 1 of said town, be, and the same hereby is levied and extended against the taxable property in said Fire District No. 1; and that the sum of $985 be used to pay for water for fire purposes in Fire District No. 2 of said town, be and the same hereby is levied and extended against the taxable property in said Fire District No. 2. And that the collector in said town be directed to pay the amount collected from such taxes to the supervisor of said Town of Whitestown; and the sums in both instances as levied and extended are hereby confirmed by this board."

The resolution was adopted.

The taxes were levied and collected and turned over to the supervisor of the defendant who appropriated the same to his own use. It does not appear that any proposition to buy the hose and supplies was submitted to the voters of fire district No. 1.

There was also introduced in evidence an order of which the following is a copy:

" No. 179                    OFFICE OF TOWN CLERK,
            " WHITESTOWN, N. Y., *Aug.* 2, 1909.
" *Supervisor of Town of Whitestown:*

" Pay to Fabric Fire Hose Company One Thousand Thirty
Dollars and charge same to Fire Dis. No. 1 fund of said Town.
$1,030.00            GEO. E. THOMAS, .
                        " *Town Clerk.*"

There was indorsed on the foregoing the following:

" Pay to the order of First National Bank, Utica, N. Y.
                " FABRIC FIRE HOSE CO.,
                    " A. DOBKE, *Secretary.*"

There was also read in evidence from page 235 of the
minutes of the town board the following:

" *Resolved*, that B. L. Wrench, supervisor of Whitestown, be
and hereby is ordered and directed to pay forthwith on presen-
tation the town order for $1030.00, payable to the Fabric Fire
Hose Co. Water District No. 1, Town of Whitestown."

The date of this resolution does not appear.

At the close of the evidence the plaintiff was permitted
to amend its complaint by adding the following:

" That the funds paid for said material [were] duly levied,
assessed, collected and paid over to said supervisor and he has
misappropriated the same."

The defendant renewed its motion for a nonsuit at the
close of the evidence, which motion was denied and an excep-
tion was taken by the defendant to such ruling.

The court made findings to which the defendant has excepted.

The burden was upon the plaintiff to show the defendant's
liability for the hose and supplies.

Fire district No. 1 of the town of Whitestown may have been
created by a special act of the Legislature or pursuant to the
power conferred by the Legislature upon boards of super-
visors to legislate under some of the statutory provisions
from which the present County Law (Consol. Laws, chap. 11;
Laws of 1909, chap. 16), in effect February 17, 1909, was
taken. The present County Law was derived from the
former County Law (Gen. Laws, chap. 18; Laws of 1892, chap.
686). By chapter 482 of the Laws of 1875 the Legislature
conferred upon boards of supervisors additional powers of

local legislation and administration.  This act was amended by chapter 512 of the Laws of 1880, under which several subdivisions were added to section 1 of the original act, and among them subdivision 34, which appears to have been the first general provision of law empowering boards of supervisors to create fire districts in unincorporated villages in towns. This subdivision was amended by chapter 439 of the Laws of 1885, chapter 264 of the Laws of 1889 and chapter 180 of the Laws of 1890.   Until the enactment of the general County Law by chapter 686 of the Laws of 1892, the power to create such a district was confined to the territory of an unincorporated village.  The acts of 1875, 1880 and 1885, above referred to, were repealed by the general County Law of 1892, but not the acts of 1889 and 1890.  However, section 37 of the act of 1892 might be regarded as repealing the acts of 1889 and 1890 by implication because the legislation was *in pari materia.* This section extended the power of boards of supervisors to legislate to create fire districts in any parts of towns outside of incorporated villages or cities.  Section 37 of chapter 686 of the Laws of 1892 was amended by chapter 937 of the Laws of 1895 and then appeared for the first time the provision enabling a board of supervisors to create a fire district where the entire town would become liable for moneys raised by tax in such fire district after the same were received by the supervisor and until they were turned over by him to the treasurer of the fire district.  Section 37 was also amended by chapter 902 of the Laws of 1896, chapter 329 of the Laws of 1897, chapter 142 of the Laws of 1902, chapter 196 of the Laws of 1903 and chapter 249 of the Laws of 1906.  Section 38 of the present County Law takes the place of section 37 of the former law.  The amendments of section 38 of the present County Law do not affect this case because they were made after the facts arose upon which this litigation must be determined.

If fire district No. 1 of the town of Whitestown was created by the board of supervisors of Oneida county in the exercise of the power conferred upon such board by the Legislature, it was probably created prior to May 18, 1892, when the County Law of 1892 went into effect, because in a district so created a vote by the electors to authorize an appropriation was not necessary, but a majority of the taxpayers determined

the question of an appropriation. It may not be amiss to mention the fact that in the town board at the time of the purchase of the hose and supplies was one Isaac P. Bielby, a lawyer of years of experience, quite familiar with matters of that kind.

Upon the theory that the district was formed prior to May 18, 1892, by the legislative act of the board of supervisors, and within the doctrine laid down by the court at Special Term in *Town of Whitestown* v. *Title Guaranty & Surety Company* (72 Misc. Rep. 498; affd., 148 App. Div. 900, without opinion, and 209 N. Y. 512, without opinion), where the Special Term was led to believe that the district was created under the Town Law hereinafter referred to, the collector had no authority to pay the moneys which were collected under the assessment to defray the expense of the hose and supplies to the supervisor of the town, and the latter had no authority to receive the same, but the same were payable to the county treasurer. (R. S. pt. 1, chap. 13, tit. 2 [1 R. S. 396], § 37, subds. 4, 5; former Tax Law [Gen. Laws, chap. 24; Laws of 1896, chap. 908], § 56, subds. 3, 4, as amd. by Laws of 1901, chaps. 158, 550, and Laws of 1908, chap. 308; present Tax Law [Consol. Laws, chap. 60; Laws of 1909, chap. 62], § 59, as amd.)

Upon the theory that there existed in the enactment of the board of supervisors a provision for the payment of the moneys by the collector in the first instance, to the supervisor of the town, it is possible that the moneys might be regarded in a general sense as town moneys, and, therefore, payable to the supervisor. In that case the provision above referred to, enabling the board to pass a law to make the town liable for such moneys after they got into the hands of the supervisor, would have no application, because, as shown above, it was not within the delegated power of the board to pass such a law.

This brings us to a consideration of the nature of fire district No. 1, under whatever law it was created. Its territorial boundaries were confined to a part of the town of Whitestown. Its boundaries were not the boundaries of any municipality. There is no suggestion that it is a municipality. It is neither a corporation nor a *quasi* corporation. It is not a legal entity against which an action for the claim could be maintained. It is true that the town agencies acted in the premises

but they acted for the benefit of the taxpayers of the district only. Their acts ought not to and would not bind the town. There is no good reason why the town should be held liable for any dereliction of these officers in the discharge of their functions exercised in behalf of the district. (*People ex rel. Farley* v. *Winkler*, 203 N. Y. 445.) It is possible that the district may be still liable for the claim and its liability may be fixed as far as it could be fixed, and as its agent, the supervisor of the town, misappropriated the moneys raised by tax to meet the claim, the district might be taxed again to defray its obligation. No action could be maintained to recover the amount of the claim, but the failure of the proper authorities to proceed to raise by tax from the district again the moneys to pay the claim could be remedied by mandamus.

So that the plaintiff would seem to be in this position in regard to its claim. If the moneys collected from the district should have been paid by the collector to the county treasurer, the plaintiff had its action against the collector. If, on the other hand, there should have been an application to compel the raising of the moneys again to satisfy the claim by mandamus, the plaintiff might have resorted to that proceeding.

We must bear in mind that neither the form in which the alleged contract was entered into nor the acts of the town board in the premises created a liability against the town by estoppel or otherwise.

In the case of *Town of Whitestown* v. *Title Guaranty & Surety Company* (*supra*), where the town sought to hold a bondsman of the supervisor, among other things, for the amount of this identical claim and failed, the court was led to believe, as already stated, from certain evidence, that the plaintiff's claim grew out of the provisions of the Town Law. I am unable to reach that conclusion upon the evidence adduced in this case. Section 313 of the Town Law (Consol. Laws, chap. 62; Laws of 1909, chap. 63), under which it was supposed that the plaintiff's claim arose, did not go into effect until February 17, 1909. It was taken from section 171 of chapter 569 of the Laws of 1890 (Gen. Laws, chap. 20), the Town Law of that year, as amended by chapter 254 of the Laws of 1891, chapter 201 of the Laws of 1894 and chapter 373 of the Laws of

1906. The amendments of section 313 of the present Town Law do not affect this case as they were made after the facts arose upon which this litigation must be determined. In 1908, when such facts arose, section 313 of the present Town Law had not even been enacted, but its predecessor, to wit, section 171 of the Town Law of 1890, as amended by chapter 373 of the Laws of 1906, appears to permit the application of the legislation to a "highway district" or "water supply district." There is no evidence of the existence of a highway district or a water supply district in this case, so that upon the evidence here no provision of the Town Law seems applicable.

However, since, as already stated, the evidence fails to show under what provision of law fire district No. 1 of the town of Whitestown was created, we cannot permit the recovery herein to stand.

It follows from the foregoing that the judgment appealed from must be reversed and a new trial granted, with costs to the appellant to abide the event.

All concurred.

Judgment reversed and new trial granted, with costs to appellant to abide the event.